IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SCOTT MEYERS, et al., | CASE NO. CV F 10-2359 LJO SMS |
| Plaintiffs, | **ORDER ON CITY DEFENDANTS' F.R.Civ.P. 12 MOTION TO DISMISS** |
| vs. | (Doc. 12.) |
| THE CITY OF FRESNO, et al., | |
| Defendants. | |

## INTRODUCTION

Defendants City of Fresno ("City") and two of its development officials seek to dismiss plaintiffs' California Civil Code section 52.1 ("section 52.1") interference with civil rights claims as not premised on necessary threats, intimidation or coercion. Plaintiffs respond that their operative complaint adequately alleges interference by threats, intimidation or coercion for section 52.1 claims. This Court considered defendants' F.R.Civ.P. 12(b)(6) motion to dismiss on the record and VACATES the March 21, 2011 hearing. For the reasons discussed below, this Court DISMISSES the section 52.1 claim.

## BACKGROUND[1]

### Summary

In an underlying Fresno County Superior Court action, plaintiffs Scott Meyers and Lila Meyers

---

[1] The factual recitation is derived generally from plaintiffs' Second Amended Complaint for Declaratory and Injunctive Relief and Damages for Corruption and Civil Rights Violations ("SAC"), the target of defendants' challenges.

1

(collectively the "Meyers") pursue construction defect claims against Granville Homes ("Granville"), the builder of their Fresno home. In this action, the Meyers pursue a section 52.1 claim against the City, Keith Bergthold ("Mr. Bergthold"), assistant director of the City's Building and Safety Services Division ("Division"), and Brian Leong ("Mr. Leong"), the Division's manager.[2] The gist of the Meyers' section 52.1 claim is that the City defendants were pressured by Fresno area developers to send correspondence to the Meyers and other homeowners[3] to coerce them to abandon construction defect litigation against developers.

## Division Correspondence To The Meyers

In February 2009, the Meyers and other homeowners initiated a Fresno County Superior Court action against Granville for construction defects. A May 12, 2009 unsigned letter ("letter") on Division letterhead was addressed to the Meyers. The letter's body stated:

> The City of Fresno recently issued a Building Industry Bulletin regarding claimed construction defects and a copy is enclosed.
>
> The City's policy is to assure that construction defects are repaired in order to bring structures into compliance with building codes. To do so we require that homeowners who claim construction defects either repair such defects by obtaining permits and having repair work inspected by the City, or disclose the claimed defects to all potential lenders and buyers.
>
> It has been brought to our attention that you have claimed in a pending lawsuit (*Fresno County Superior Court Case No. 09 CE CG 00333*) that your home has construction defects, including failures to comply with building codes. The purpose of this Notice is to inform you of the City's policy regarding code related construction defects.
>
> The City of Fresno seeks to assure the health and safety of its citizens. We believe that the enclosed policy is consistent with that obligation.

The letter references an August 21, 2008 Building Industry Bulletin ("bulletin") which states in pertinent part:

> **POLICY:**
>
> The City of Fresno's position regarding building construction is to assure that the health and life safety of its citizens is maintained. . . . The City of Fresno's interest in construction defects is that if a condition exists that does not conform to the minimum code standards of the State of California, the structure in question will be repaired to

---

[2] The City, Mr. Bergthold and Mr. Leong will be referred to collectively as the "City defendants."

[3] The SAC alleges class allegations and seeks to pursue claims for two potential classes.

bring it in compliance.  In an effort to protect future home buyers regarding potential construction defects, one of the following courses of action shall be taken:

1. The homeowner shall repair all code related construction defects.  All required permits and applicable plans shall be provided and work inspected by the City of Fresno Building and Safety Division for compliance to all California Building Code Standards.

2. The homeowner provides a disclosure statement to all potential lenders and buyers listing known construction defects.

3. The City of Fresno files a correctional or informational lien on the home title, to assure the protection of future owners.

The City Council has never adopted or enforced the bulletin, and the Division lacked authority to send the letter with the bulletin.  The City Municipal Code lacks requirements that a homeowner disclose or repair claimed defects and lacks reference as to "informational liens regarding claimed defects."  The letter and bulletin's sole purpose "was to retaliate against plaintiff homeowners for exercising their constitutional rights."[4]  The letter "attempted to convince homeowners that if the homeowners did not disclose or repair all 'claimed' defects, the City of Fresno would record a list of all 'claimed' defects and building code violations on title to their property."  The City "lacks authority to cloud title until it has conducted its own investigation and independently confirmed that code violations exist," and such absence of authority is not reflected in the letter.

The "letters" committed homeowners to repair "claimed" defects although "DEVELOPERS'[5] negligent building practices and the City of Fresno's negligent inspections allowed the construction defects and code violations to exist in the first place."  The City targeted homeowners who asserted defect claims "with threatening and misleading letters simply because DEVELOPERS requested it."  The City "acted in concert with DEVELOPERS to threaten, coerce, and intimidate unsettled plaintiff homeowners in retaliation for exercising their constitutional rights of access to the courts and to petition the government for redress of grievances."  The City intimidates homeowners at the DEVELOPERS' request "by using Building Inspectors as surrogates."

---

[4] The SAC references "letters" with identical content and with an enclosed bulletin which were sent to other homeowners.

[5] The SAC defines "DEVELOPERS" as "real-estate developers, builders, contractors, building associations, or building lobbyists."

**The Meyers' Section 52.1 Claim**[6]

Section 52.1 is known as the California Bane Act and addresses civil actions for protection of rights and remedies for violations of protected rights:

> (a) If a person or persons, whether or not acting under color of law, interferes **by threats, intimidation, or coercion**, or attempts to interfere **by threats, intimidation, or coercion**, with the exercise or enjoyment by any individual or individuals of **rights secured by the Constitution or laws of the United States, or of the rights secured by the Constitution or laws of this state**, the Attorney General, or any district attorney or city attorney may bring a civil action for injunctive and other appropriate equitable relief in the name of the people of the State of California, in order to protect the peaceable exercise or enjoyment of the right or rights secured. . . .
>
> (b) Any individual whose **exercise or enjoyment of rights** secured by the Constitution or laws of the United States, or of rights secured by the Constitution or laws of this state, has been interfered with, or attempted to be interfered with, **as described in subdivision (a)**, may institute and prosecute in his or her own name and on his or her own behalf a civil action for damages . . . (Bold added.)

The SAC's section 52.1 claim alleges:

> Defendants violated California Civil Code section 52.1 with policies, practices, conduct, and customs that interfered, and attempted to interfere, by threats, intimidation, and coercion with Plaintiffs' exercise and enjoyment of their constitutional: (1) right of access to the courts; (2) right to petition the government for redress of grievances; (3) right to equal protection of the laws; (4) right of procedural due process; and (5) right of substantive due process as guaranteed by the laws of California and the United States and California Constitutions.
>
> Defendants interfered or attempted to interfere with Plaintiffs' constitutional rights by the use of threats, intimidation, or coercion in that Defendants wrongly interjected themselves into a civil dispute between Plaintiffs and DEVELOPERS simply because the DEVELOPERS demanded it.  Defendants sided with DEVELOPERS and threatened Plaintiffs with false disclosure requirements, potential liens on their property, and the costs of repairing building code violations caused by DEVELOPERS . . .

The section 52.1 claim further alleges that the "letters" and bulletin were intended to force the Meyers to abandon their underlying action by convincing the Meyers that they would be required to either "pay for permits from the City and pay for repairing all 'claimed' construction defects throughout their homes," "disclose defects," or "face having a cloud on their title."  The section 52.1 claim further alleges that the "statements are threatening, intimidating, and coercive because Plaintiffs thought they were true, when in reality they were false."

---

[6] The SAC alleges 42 U.S.C. § 1983, equal protection, and procedural and substantive due process claims, however, the City defendants challenge only the SAC's (first) section 52.1 claim.

The section 52.1 claim seeks compensatory damages no less than $4,000 per incident and attorney fees.

## DISCUSSION

### F.R.Civ.P. 12(b)(6) Motion To Dismiss Standards

The City defendants seek to dismiss the section 52.1 claim in that the letter and bulletin fails to support interference with the Meyers' rights by "threats, intimidation, or coercion."

A F.R.Civ.P. 12(b)(6) motion to dismiss is a challenge to the sufficiency of the pleadings set forth in the complaint. "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheurer v. Rhodes*, 416 U.S. 232, 236, 94 S.Ct. 1683 (1974); *Gilligan v. Jamco Development Corp.*, 108 F.3d 246, 249 (9th Cir. 1997). A F.R.Civ.P. 12(b)(6) dismissal is proper where there is either a "lack of a cognizable legal theory" or "the absence of sufficient facts alleged under a cognizable legal theory." *Balisteri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1990); *Graehling v. Village of Lombard, Ill.*, 58 F.3d 295, 297 (7th Cir. 1995).

In resolving a F.R.Civ.P. 12(b)(6) motion, a court must: (1) construe the complaint in the light most favorable to the plaintiff; (2) accept all well-pleaded factual allegations as true; and (3) determine whether plaintiff can prove any set of facts to support a claim that would merit relief. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-338 (9th Cir. 1996). Nonetheless, a court is not required "to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Sciences Securities Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (citation omitted). A court "need not assume the truth of legal conclusions cast in the form of factual allegations," *U.S. ex rel. Chunie v. Ringrose*, 788 F.2d 638, 643, n. 2 (9th Cir.1986), and a court must not "assume that the [plaintiff] can prove facts that it has not alleged or that the defendants have violated . . . laws in ways that have not been alleged." *Associated General Contractors of California, Inc. v. California State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct. 897 (1983). A court need not permit an attempt to amend if "it is clear that the complaint could not be saved by an amendment." *Livid Holdings Ltd. v. Salomon Smith Barney, Inc.*, 416 F.3d 940, 946 (9th Cir. 2005).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 127 S. Ct. 1955, 1964-65 (2007) (internal citations omitted). Moreover, a court "will dismiss any claim that, even when construed in the light most favorable to plaintiff, fails to plead sufficiently all required elements of a cause of action." *Student Loan Marketing Ass'n v. Hanes*, 181 F.R.D. 629, 634 (S.D. Cal. 1998). In practice, a complaint "must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." *Twombly*, 550 U.S. at 562, 127 S.Ct. at 1969 (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1106 (7th Cir. 1984)).

In *Ashcroft v. Iqbal*, __ U.S. __, 129 S.Ct. 1937, 1949 (2009), the U.S. Supreme Court explained:

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." . . . A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. . . . The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. (Citations omitted.)

After discussing *Iqbal*, the Ninth Circuit Court of Appeals summarized: "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Service*, 572 F.3d 962, 989 (9th Cir. 2009) (quoting *Iqbal*, __ U.S. __, 129 S.Ct. at 1949).

The U.S. Supreme Court applies a "two-prong approach" to address a motion to dismiss:

> First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. . . . Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. . . . Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. . . . But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "show[n]"-"that the pleader is entitled to relief." Fed. Rule Civ. Proc. 8(a)(2).
>
> In keeping with these principles a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine

1    whether they plausibly give rise to an entitlement to relief.
2 *Iqbal*, __ U.S. __, 129 S.Ct. at 1949-1950.

3    For a F.R.Civ.P. 12(b)(6) motion, a court generally cannot consider material outside the complaint. *Van Winkle v. Allstate Ins. Co.*, 290 F.Supp.2d 1158, 1162, n. 2 (C.D. Cal. 2003). Nonetheless, a court may consider exhibits submitted with the complaint. *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir. 1987);*Van Winkle*, 290 F.Supp.2d at 1162, n. 2. In addition, a "court may consider evidence on which the complaint 'necessarily relies' if: (1) the complaint refers to the document; (2) the document is central to the plaintiff's claim; and (3) no party questions the authenticity of the copy attached to the 12(b)(6) motion." *Marder v. Lopez*, 450 F.3d 445, 448 (9th Cir. 2006). A court may treat such a document as "part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir.2003). Such consideration prevents "plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting reference to documents upon which their claims are based." *Parrino v. FHP, Inc.*, 146 F.3d 699, 706 (9th Cir. 1998).[7] A "court may disregard allegations in the complaint if contradicted by facts established by exhibits attached to the complaint." *Sumner Peck Ranch v. Bureau of Reclamation*, 823 F.Supp. 715, 720 (E.D. Cal. 1993) (citing *Durning v. First Boston Corp.*, 815 F.2d 1265, 1267 (9th Cir.1987)). Moreover, "judicial notice may be taken of a fact to show that a complaint does not state a cause of action." *Sears, Roebuck & Co. v. Metropolitan Engravers, Ltd.*, 245 F.2d 67, 70 (9th Cir. 1956); *see Estate of Blue v. County of Los Angeles*, 120 F.3d 982, 984 (9th Cir. 1997). A court properly may "'take judicial notice of matters of public record outside the pleadings' and consider them for purposes of the motion to dismiss." *Mir v. Little Co. of Mary Hosp.*, 844 F.2d 646, 649 (9th Cir. 1988) (citation omitted).

23   With these standards in mind, this Court turns to the City defendants' challenges to the Section 52.1 claim.

25   / / /

---

[7] "We have extended the 'incorporation by reference' doctrine to situations in which the plaintiff's claim depends on the contents of a document, the defendant attaches the document to its motion to dismiss, and the parties do not dispute the authenticity of the document, even though the plaintiff does not explicitly allege the contents of that document in the complaint." *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (citing *Parrino*, 146 F.3d at 706).

7

**Threats, Intimidation Or Coercion**

The City defendants attack the SAC's failure to allege misconduct accompanied by threats, intimidation or coercion. The Meyers respond that the SAC alleges "economic coercion" to support a section 52.1 claim.

Section 52.1 permits a civil action against a person who interferes or attempts to interfere by threats, intimidation or coercion with "exercise or enjoyment" of rights secured by the U.S. and California Constitutions and laws. "Section 52.1(b) provides a cause of action to any person who has been denied rights under the laws of California." *Winarto v. Toshiba America Electronics Components, Inc.*, 274 F.3d 1276, 1289, n. 13 (9th Cir. 2001), *cert. denied*, 537 U.S. 1098, 123 S.Ct. 816 (2003).

A section 52.1 plaintiff must demonstrate that the constitutional violation "occurred and that the violation was accompanied by threats, intimidation or coercion within the meaning of the statute." *Barsamian v. City of Kingsburg*, 597 F.Supp.2d 1054, 1057 (E.D. Cal. 2009). The necessary elements for a section 52.1 claim are: "(1) defendants interfered with plaintiff's constitutional rights by threatening or committing violent acts; (2) that plaintiff reasonablely believed that if she exercised her constitutional rights, defendants would commit violence against her property; (3) plaintiff was harmed; and (4) defendants' conduct was a substantial factor in causing plaintiff's harm." *Tolosko-Parker v. County of Sonoma*, 2009 WL 498099, at *5 (N.D. Cal. 2009).

"The essence of a Bane Act claim is that the defendant, by the specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to do something that he or she was not required to do under the law." *Austin B. v. Escondido Union School Dist.*, 149 Cal.App.4th 860, 883, 57 Cal.Rptr.3d 454 (2007). Section 52.1 requires "an attempted or completed act of interference with a legal right, accompanied by a form of coercion." *Jones v. Kmart Corp.*, 17 Cal.4th 329, 334, 70 Cal.Rptr.2d 844 (1998). Section 52.1 "protects not only against actual interference with constitutional rights, but also against attempted interference." *Ramirez v. County of Los Angeles*, 397 F.Supp.2d 1208, 1229 (C.D. Cal. 2005). The word "interferes" as used in the Bane Act means "violates." *Austin B.*, 149 Cal.App.4th at 883, 57 Cal.Rptr.3d 454.

Although section 52.1 was adopted "to stem a tide of hate crimes," *Jones*, 17 Cal.4th at 338, 70

8

Cal.Rptr.2d 844, section 52.1 is not limited to such crimes and does not require plaintiffs to demonstrate "an actual hate crime." *Venegas*, 32 Cal.4th at 843, 87 P.3d 1; *see In re Joshua H.,* 13 Cal.App.4th 1734, 1748, fn. 9, 17 Cal.Rptr.2d 291 (1993) (the Bane Act and related statutes "are California's response to [the] alarming increase in hate crimes"). Nonetheless, "section 52.1 does not extend to all ordinary tort actions because its provisions are limited to threats, intimidation, or coercion that interferes with a constitutional or statutory right." *Venegas*, 32 Cal.4th at 707, 87 P.3d 1. A defendant is liable under section 52.1 "if he or she interfered with the plaintiff's constitutional rights by the requisite threats, intimidation, or coercion." *Austin B.*, 149 Cal.App.4th at 882, 57 Cal.Rptr.3d 454.

"Section 52.1 does not provide any substantive protections; instead, it enables individuals to sue for damages as a result of constitutional violations." *Reynolds v. County of San Diego*, 84 F.3d 1162, 1170 (9th Cir. 1996), *overruled on other grounds, Acri v. Varian Assocs., Inc.*, 114 F.3d 999 (9th Cir. 1997). Section 52.1 "clearly provides for a personal cause of action for the victim . . ." *Bay Area Rapid Transit Dist. v. Superior Court,* 38 Cal.App.4th 141, 145, 44 Cal.Rptr.2d 887 (1995). The Bane Act "is limited to plaintiffs who themselves have been the subject of violence or threats." *Bay Area Rapid Transit*, 38 Cal.App.4th at 145, 44 Cal.Rptr.2d 887.

A threat "involves the intentional exertion of pressure to make another fearful or apprehensive of injury or harm." *Planned Parenthood League of Massachusetts, Inc. v. Blake*, 417 Mass. 467, 474, 631 N.E.2d 985 (interpreting the Massachusetts Civil Rights Act after which section 52.1 is modeled). Intimidation means to "make timid or fearful." *Ex Parte Bell*, 19 Cal.2d 488, 526, 122 P.2d 22 (1942). Coercion is "the application to another of such force, either physical or moral, as to constrain him to do against his will something he would not otherwise have done." *Ex Parte Bell*, 19 Cal.2d at 526, 122 P.2d 22.

The City defendants argue that sending the unsigned letter with the "general, non-directed informational bulletin concerning construction defects and code-related repairs" does not constitute requisite threats, intimidation or coercion. The City defendants characterize the limited correspondence as lacking "any attempted or completed act of interference with any legal right, accompanied by a form or coercion."

The Meyers argues that the SAC sufficiently alleges threats, intimidation or coercion with their

9

rights. The Meyers contend that the City "acted intentionally because it carried out the defendant developers' requests to mail the letters" and "applied pressure to Plaintiffs by sending the letters that threatened economic injury." The Meyers characterize the letters as "an intentional exertion of pressure" in that they were sent to home addresses and emphasized pending construction defect litigation, for instance, by identifying the Meyers' case by name and number. The Meyers argue that "the letters succeeded in making Plaintiffs fearful and apprehensive of harm from the City." The Meyers point to SAC allegations that homeowners who resolved their construction defect claims did not receive the letter and bulletin. The Meyers note that the City's actions conveyed "that by dismissing their lawsuit the Plaintiffs' problems with the City of Fresno would magically disappear." The Meyers conclude that the letter and bulletin "were intended to injure and damage Plaintiffs by forcing them to abandon their potentially valuable lawsuits and by making them believe that remaining in the case would be damaging by destroying the value of their homes."

Despite the SAC's verbose rambling,[8] the heart of the section 52.1 claim is that the City defendants interfered or attempted to interfere with the Meyers' underlying construction defect litigation by sending the Meyers the letter and bulletin. The letter and bulletin require homeowners to repair or disclose defects, or to face recording of a correctional or information lien. Although the letter's mention of the underlying litigation is questionable, the SAC lacks facts to connect potential abandonment of the underlying litigation to the letter, bulletin or their purported effects. The SAC and the Meyers' opposition papers are an exercise in hyperbole, not concrete facts to demonstrate section 52.1 elements. Construing the SAC in the Meyers' favor, an illogical stretch is required to connect the letter and bulletin to potential abandonment of underlying litigation. "[W]hether a constitutional violation occurred and whether that violation was accompanied by any threats, intimidation or coercion are separate analytical

---

[8] Based on the SAC's verbosity, stretching 32 pages, this Court is compelled to remind the Meyers' counsel that F.R.Civ.P. 8 requires a plaintiff to "plead a short and plain statement of the elements of his or her claim, identifying the transaction or occurrence giving rise to the claim and the elements of the prima facie case." *Bautista v. Los Angeles County*, 216 F.3d 837, 840 (9th Cir. 2000). F.R.Civ.P. 8(d)(1) requires each allegation to be "simple, concise, and direct." This requirement "applies to good claims as well as bad, and is the basis for dismissal independent of Rule 12(b)(6)." *McHenry v. Renne*, 84 F.3d 1172, 1179 (9th Cir. 1996). "Something labeled a complaint but written more as a press release, prolix in evidentiary detail, yet without simplicity, conciseness and clarity as to whom plaintiffs are suing for what wrongs, fails to perform the essential functions of a complaint." *McHenry*, 84 F.3d at 1180. "Prolix, confusing complaints . . . impose unfair burdens on litigants and judges." *McHenry*, 84 F.3d at 1179. This Court ADMONISHES the Meyers' counsel to adhere to basic pleading requirements.

inquiries." *Barsamian*, 597 F.Supp.2d at 1064. The letter and bulletin insinuate the need to repair or disclose defects without threat, intimidation or coercion to interfere with rights. Presumably, the underlying litigation provides a means to remedy alleged construction defects. The SAC lacks an actionable section 52.1 claim, and the Meyers point to no potential facts to resurrect the claim.

### No Threats Of Violence

The City defendants point to the SAC's failure to allege "threats of violence" or "fighting words" and seek to invoke section 52.1(j) which provides:

> Speech alone is not sufficient to support an action brought pursuant to subdivision (a) or (b), except upon a showing that the speech itself **threatens violence** against a specific person or group of persons; and the person or group of persons against whom the threat is directed reasonably fears that, because of the speech, violence will be committed against them or their property and that the person threatening violence had the apparent ability to carry out the threat. (Bold added.)

The City defendants fault the SAC's attempt to convert their non-violent speech into misconduct actionable under section 52.1 in that the section 52.1 claim "is derived exclusively from speech," which "is generally not actionable under section 52.1 unless there are acts or threats of violence." The City defendants note the absence of a threat of violence with "expression of intent to injure or damage plaintiffs." The City defendants characterize the letter as "general" with "limited, introductory background concerning City policies and construction defects." The City defendants point out that the bulletin lacks threats of violence in that it does not single out a requisite specific person or group in that it is addressed to "Architects, Engineers, Contractor/Developers and Homeowners."

The Meyers respond that the "speech element" of the City defendants conduct is merely "incidental to their conduct of retaliating against Plaintiffs." The Meyers characterize the letter and bulletin as a "manifestation of a conspiracy to retaliate."

Section 52.1(j) further bolsters dismissal of the section 52.1 claim which is premised on the letter and bulletin, neither of which threaten violence to a specific person or group. The Meyers unpersuasively argue that the City defendants attempt to re-frame their retaliation as free speech. Although sending the letter and bulletin is questionable, the SAC lacks facts to support elements of a section 52.1 claim.

### Further Amendment

As an alternative to dismissal of the section 52.1 claim, the Meyers ask for a further attempt to amend. The SAC constitutes the Meyers' third pleading attempt. Quite frankly, the Meyers have had ample opportunities to plead the claim properly. A further attempt to amend an unsupportable claim will result only in further delay and is denied.

## **CONCLUSION AND ORDER**

For the reasons discussed above, this Court:

1. DISMISSES with prejudice the SAC's (first) section 52.1 claim; and
2. ORDERS the City defendants, no later than April 4, 2011, to file and serve and answer to the SAC's remaining allegations and claims.

IT IS SO ORDERED.

**Dated:** **March 15, 2011**      /s/ Lawrence J. O'Neill
                                    UNITED STATES DISTRICT JUDGE